## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CHARLES W. SCHARF, STEVEN D. BLACK, MARK A. CHANCY, CELESTE A. CLARK, THEODORE F. CRAVER, JR., RICHARD K. DAVIS, WAYNE M. HEWETT, DONALD M. JAMES, CECELIA G. MORKEN, MARIA R. MORRIS, FELICIA F. NORWOOD, CHARLES H. NOSKI, RICHARD B. PAYNE, JR., JUAN A. PUJADAS, RONALD L. SARGENT, AND SUZANNE M. VAUTRINOT | Case No. |
| Movants, |  |
| v. |  |
| ON POINT INVESTIGATIONS, LLC |  |
| Respondent. |  |

## INDIVIDUAL DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS FOR PRODUCTION OF <u>DOCUMENTS AND TESTIMONY</u>

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................. ii

PRELIMINARY STATEMENT ..................................................................... 1

BACKGROUND ............................................................................................. 2

    I.    Procedural History and Status of the Action Pending in the
Northern District of California...................................................... 2

    II.    The Individual Defendants Request Information Relating to
the "Independent Investigation" from Plaintiffs ......................... 4

    III.    The Individual Defendants Request Information Relating to
the Investigation from On Point, As Plaintiffs Suggested ........... 6

ARGUMENT .................................................................................................. 10

    I.    The Requested Discovery is Relevant. ....................................... 10

    II.    On Point May Not Unilaterally Assert the Attorney Work
Product Doctrine on Plaintiffs' Behalf where Plaintiffs and
Plaintiffs' Counsel Have Not Invoked Such Protection. ........... 11

    III.    Even if On Point Could Properly Invoke the Attorney Work
Product Protection, the Doctrine Does Not Shield
Documents Regarding On Point's Investigation from
Discovery in the Circumstances of this Case............................... 12

    IV.    Even if On Point's Investigation Qualifies as Protected
Attorney Work Product, On Point is Still Required to
Produce Discovery Relating to the Underlying Facts of and
Obtained Through its Investigation. ........................................... 18

    V.    On Point's Remaining Objections Are Make-Weight And
Should Be Overruled.................................................................. 20

CONCLUSION.............................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bacchi v. Mass. Mut. Life Ins. Co.*,
    110 F. Supp. 3d 270 (D. Mass. 2015) ............................................................... 14

*Barrett v. Badger Ladder, LLC*,
    2017 WL 462511 (D.N.H. Feb. 3, 2017) ........................................................ 14, 15

*Catino v. Travelers Ins. Co., Inc.*,
    136 F.R.D. 534 (D. Mass. 1991) ....................................................................... 11

*Columbia Data Prods., Inc. v. Autonomy Corp. Ltd.*,
    2012 WL 6212898 (D. Mass. Dec. 12, 2012) ................................................ 13, 15

*Cook v. Lynn and William, Inc.*,
    344 F.R.D 149 (D. Mass. 2023) ......................................................................... 20

*Fine v. Sovereign Bank*,
    2008 WL 11388663 (D. Mass. Mar. 7, 2008) .................................................... 13

*Hatamian v. Advanced Micro Devices, Inc.*,
    2016 WL 2606830 (N.D. Cal. May 6, 2016) .................................................. 16, 18

*In re Banc of Cal. Sec. Litig.*,
    2018 WL 2373860 (C.D. Cal. May 23, 2018) .................................................... 16

*In re Grand Jury Subpoena*,
    220 F.R.D. 130 (D. Mass. 2004) ....................................................................... 19

*In re: New England Compounding Pharmacy, Inc.*,
    2016 WL 6883215 (D. Mass. July 28, 2016) ................................................. 12, 19

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
    2024 WL 1808607 (N.D. Cal. Apr. 25, 2024) ...................................................... 5

*Jones v. Secord*,
    2011 WL 2456097 (D. Mass. June 15, 2011) .................................................... 19

*MAO-MSP Recovery II LLC v. Mercury Gen. Corp.*,
    2020 WL 5732332 (D. Mass. Sept. 24, 2020) .................................................... 11

**Page(s)**

*Metro. Prop. and Cas. Ins. Co. v. Savi Hill Fam. Chiropractic, Inc.*,
    2019 WL 13180456 (D. Mass. Mar. 15, 2019)....................................................... 14-16

*Roy v. FedEx Ground Package Sys., Inc.*,
    675 F. Supp. 3d 140 (D. Mass. 2023) ............................................................. 10

*Schoenmann v. Fed. Deposit Ins. Corp.*,
    7 F. Supp. 3d 1009 (N.D. Cal. 2014) .......................................................... 17

*Shenwick v. Twitter, Inc.*,
    2018 WL 8244911 (N.D. Cal. Nov. 27, 2018) ............................................... 5

*Stamps v. Town of Farmingham*,
    38 F. Supp. 3d 134 (D. Mass. 2014) ........................................................... 12

*Steffenberg v. Gilman*,
    2005 WL 8176505 (D. Mass. May 25, 2005) ............................................... 11

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991)....................................................................... 13

*United States v. Nobles*,
    422 U.S. 225 (1975) ......................................................................... 12, 13, 15

**Rules and Statutes**

Fed. R. Civ. P. 26 ......................................................................................... 12, 18

Movants (defined below) respectfully submit this memorandum of law in support of their motion pursuant to Rule 37 and 45 of the Federal Rules of Civil Procedure for an order compelling Respondent, On Point Investigations, LLC ("On Point"), to comply with document and deposition subpoenas served on it in connection with a shareholder derivative suit pending in the United States District Court for the Northern District of California (the "Issuing Court"), captioned, *In re Wells Fargo & Co. Hiring Pracs. Derivative Litig.*, No. 3:22-cv-05173-TLT (N.D. Cal.) (the "Action").

## PRELIMINARY STATEMENT

In this shareholder derivative action pending in the Northern District of California, the plaintiffs touted a private investigative firm's "independent investigation" in their complaint and claimed such investigation—which they described in detail across fourteen paragraphs— "support[s]" their claims. Now that same private investigative firm (the respondent on this motion) is resisting discovery into that same investigation. Numerous decisions in this Circuit have overruled a work product objection and permitted discovery of an investigation in exactly this situation. The Court should do the same here.

In the Action out of which this motion arises, the shareholder derivative plaintiffs allege that certain directors of Wells Fargo & Company ("Wells Fargo" or the "Company"), i.e., Movants, should be held liable for making or authorizing allegedly false or misleading statements concerning the Company's diversity hiring initiative and for breaching their duty of oversight over the Company's home lending practices. In an effort to bolster these claims, the plaintiffs hired a private investigator to conduct an "independent investigation" of these issues, which plaintiffs then touted in an amended complaint as providing "support" for their claims against Movants. That private investigator was On Point.

When Movants sought discovery into On Point's investigation from plaintiffs, plaintiffs directed Movants to seek such discovery from On Point directly. Movants did exactly that. Specifically, Movants served the two subpoenas at issue in this motion, on June 11 and 12, 2025, one seeking documents and the other seeking a Rule 30(b)(6) deposition, with both concerning the investigation touted in plaintiffs' pleading. Even though plaintiffs have not invoked work product to prevent the discovery sought in the subpoenas directed at On Point—and indeed invited Movants to conduct discovery into the investigation from On Point—On Point has refused to produce documents or provide testimony concerning its investigation on the grounds that it is protected attorney work product.

On Point's objections should be overruled. The law plainly precludes parties from injecting their so-called "independent investigations" into their pleadings to bolster their claims while at the same time shielding such investigations from discovery. In these circumstances, any protection of the work product doctrine is clearly waived. Otherwise, the attorney work product doctrine would contravene notions of fairness and defeat the integrity of the adversarial process, which the work product doctrine is designed to protect, permitting parties to selectively use fragments of protected information to their unilateral advantage. Accordingly, and for the additional reasons described below, Movants respectfully request that the Court enter an order compelling On Point to comply with the subpoenas at issue by producing responsive documents within seven (7) days and testifying at a 30(b)(6) deposition within fourteen (14) days.

## **BACKGROUND**

I.    **Procedural History and Status of the Action Pending in the Northern District of California**

Movants are Charles W. Scharf, the Chief Executive Officer and President of Wells Fargo & Company, and Steven D. Black, Mark A. Chancy, Celeste A. Clark, Theodore F.

Craver, Jr., Richard K. Davis, Wayne M. Hewett, Donald M. James, Cecelia G. Morken, Maria R. Morris, Felicia F. Norwood, Charles H. Noski, Richard B. Payne, Jr., Juan A. Pujadas, Ronald L. Sargent, and Suzanne M. Vautrinot, each of whom is a current or former director of Wells Fargo & Company and a defendant in the Action (collectively, the "Individual Defendants"). The plaintiffs are City of Pontiac Reestablished General Employees' Retirement System, City of Plantation Police Officers' Retirement Fund, and Amy J. Cook (the "Plaintiffs"), each of whom purports to be a shareholder of the nominal defendant Wells Fargo & Company.

On September 9, 2022, Plaintiffs brought a shareholder derivative action against Nominal Defendant Wells Fargo and the Individual Defendants (collectively, the "Defendants") claiming breaches of fiduciary duty and violations of securities laws in connection with alleged discriminatory lending and hiring practices.[1] With respect to lending practices, Plaintiffs alleged that Wells Fargo's automated underwriting systems produced systemic disparities for minority borrowers, and that the Individual Defendants failed to implement a reporting structure to monitor fair lending compliance. With respect to hiring practices, Plaintiffs alleged that Wells Fargo conducted "sham" interviews in order to comply with its publicly-announced initiative to have at least 50% of interview candidates be diverse for most U.S. roles with direct compensation greater than $100,000. They alleged that the Individual Defendants issued false and misleading statements about their progress on this initiative.

On September 19, 2024, the Court issued an order granting-in-part and denying-in-part the Individual Defendants' motions to dismiss. That order dismissed Plaintiffs' *Caremark* claims while upholding Plaintiffs' securities laws claims as to the hiring allegations. The order

---

[1] A copy of Plaintiffs' Second Amended Complaint dated October 3, 2024 (the "SAC") is attached as Exhibit A to the Declaration of Mark E. McDonald in Support of the Individual Defendants' Motion to Compel (the "McDonald Decl.").

3

also dismissed Plaintiffs' securities laws claims while upholding Plaintiffs' *Caremark* claims as to the lending discrimination allegations.  Order Granting-In-Part and Denying-In-Part Defs.' Mots. to Dismiss, *In re Wells Fargo & Co. Hiring Pracs. Derivative Litig.*, No. 3:22-cv-05173-TLT (N.D. Cal. Sept. 19, 2024), ECF No. 176.  On October 3, 2024, Plaintiffs filed their SAC.

Central to the evidence in support of Plaintiffs' claims are the results of an "independent investigation" conducted by Plaintiffs' private investigator, On Point.  *See* SAC ¶ 152.  Plaintiffs alleged in the SAC that the "[i]nformation revealed through [the investigator's] conversations with former employees support the claim that discrimination was systematic at Wells Fargo," *see id.* ¶ 152.  The SAC detailed interviews that the private investigator conducted with four anonymous former employees of Wells Fargo (the "FEs"), whose testimony the SAC alleged supports Plaintiffs' theory of the case.  *See id.* ¶¶ 152–66.  Among other things, Plaintiffs alleged that the FEs believed discrimination was widespread throughout Wells Fargo, witnessed sham interviews, received customer complaints alleging lending discrimination, and were instructed not to escalate such complaints.  *Id.* ¶¶ 153–62.  Plaintiffs further claimed that the FEs witnessed an increase in mortgage "overlays," which allegedly heightened the eligibility requirements for loan approval and disproportionately impacted minority borrowers.  *Id.* ¶¶ 163–66.

## II.    The Individual Defendants Request Information Relating to the "Independent Investigation" from Plaintiffs

On April 9, 2025, the Individual Defendants served their First Set of Interrogatories.  *See* McDonald Decl. Ex. C.  Interrogatory No. 1 requested a list of participants in communications between Plaintiffs and the FEs and the dates on which those communications took place.  Interrogatory No. 2 requested that Plaintiffs identify the private investigator referenced in the SAC.  On May 16, 2025, Plaintiffs served their Responses and Objections.  *See* McDonald Decl. Ex. D.  In response to Interrogatory No. 1, Plaintiffs refused to provide the information

requested.  *Id.*  In response to Interrogatory No. 2, Plaintiffs stated that their private investigator

is On Point.  *Id.*

On May 29, 2025, the parties met and conferred.  Plaintiffs stated they would not provide

a response to Interrogatory No. 1 because (1) On Point is in possession of information regarding

communications with the FEs and (2) to the extent that Plaintiffs are in possession of that

information, they claimed it is protected work product.  On May 30, 2025, the Individual

Defendants explained that, contrary to Plaintiffs' claims, the requested dates and identities are

discoverable non-privileged facts, not information protected by the work product doctrine.  *See*

McDonald Decl. Ex. E.[2]  On June 11 and June 12, 2025 respectively, in light of the information

provided by Plaintiffs in response to Interrogatory No. 2 and during the parties' meet and confer,

the Individual Defendants served On Point with a non-party subpoena for the production of

documents and a non-party subpoena for a 30(b)(6) deposition.  *See* McDonald Decl. Exs. F, G.

On June 16, 2025, Plaintiffs again referred the Individual Defendants to On Point for

information regarding the participants in communications with the FEs and the dates of these

communications.  Plaintiffs stated, "On[]Point is in the best position to know the specific dates

that its investigators contacted the [FEs] cited in the complaint.  Plaintiffs understand that

subpoenas have been issued to On[]Point for documents and testimony.  If Defendants want to

know when the [FE] interviews were conducted, they can ask those questions during the

deposition."  *See* McDonald Decl. Ex. I.  On June 30, 2025, Plaintiffs served Amended

Responses and Objections, once again referring the Individual Defendants to On Point: "Lead

---

[2]    *See Shenwick v. Twitter, Inc.*, 2018 WL 8244911, at *2 (N.D. Cal. Nov. 27, 2018) ("The dates of
the communications do not reveal an attorney's mental thoughts and impressions.  Thus, the attorney
work product doctrine does not protect the dates that Plaintiffs' counsel or Plaintiff spoke with the
Confidential Witnesses."); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2024 WL
1808607, at *3 (N.D. Cal. Apr. 25, 2024) ("Names, titles, and dates are factual matters, not attorney work
product.").

Plaintiffs state that they did not communicate with any of the FEs referenced in the [SAC]. To the extent Lead Plaintiffs have in their possession, custody or control information from these individuals, it was provided by counsel's investigator, On Point []." McDonald Decl. Ex. J.

### III. The Individual Defendants Request Information Relating to the Investigation from On Point, As Plaintiffs Suggested

As noted, as Plaintiffs repeatedly suggested, on June 11, 2025 and June 12, 2025 respectively, the Individual Defendants served On Point with a non-party subpoena for the production of documents (the "Requests for Production") and a non-party subpoena for a 30(b)(6) deposition (the "Notice of Deposition") (collectively, the "Subpoenas"). *See* McDonald Decl. Exs. F, G. Counsel for On Point accepted service of both subpoenas. *See* McDonald Decl. Ex. H. The Individual Defendants' Subpoenas to On Point are narrowly focused on discovering the scope, mechanisms, and procedures underlying On Point's investigation, as well as the reliability of On Point's "independent investigation." Specifically, the Individual Defendants requested the production of documents concerning:

- **Request Nos. 1, 17**: The identities and qualifications of each person that On Point employed to participate in the investigation (including for the purpose of assessing the reliability of the investigation and potential bias or other flaws);

- **Request Nos. 2–3**: Any transactions in Wells Fargo stock that On Point completed or contemplated and/or On Point's ownership in Wells Fargo stock (including for the purpose of assessing motive and potential bias);

- **Request Nos. 4–6, 8, 10:** Communications between On Point and (i) media outlets, (ii) Wells Fargo directors, (iii) the FEs or any other Wells Fargo current or former employees; (iv) Plaintiffs or Plaintiffs' counsel; and (v) any other individual concerning the allegations in the SAC (including for the purpose of understanding the scope of On Point's investigation, including how many former employees or other witnesses On Point interviewed for its investigation, and the results of such investigation, including whether it supports Plaintiffs' claims as they alleged in the SAC or undermines those claims);

- **Request Nos. 7, 9, 11:** Materials substantiating the allegations in the SAC attributed to the Former Employees (including documents provided by the FEs to On Point concerning the allegations in the SAC), or any other materials otherwise referenced but not attached

to, the SAC (including for the purpose of understanding the scope and results of On Point's investigation, and whether that investigation supports Plaintiffs' claims);

- **Request No. 13:**  The compensation or remuneration that On Point received or expects to receive in connection with this Action (including for the purpose of assessing motive and bias, and whether the investigation was "independent" as Plaintiffs claim);

- **Request Nos. 14–15:**  On Point's participation as a plaintiff, defendant, witness, or investigator in any other shareholder derivative action, including transcripts of depositions in which On Point was examined (including for the purpose of assessing reliability, motive, and bias);

- **Request No. 16:**  On Point's retention of a public relations or communications firm in connection with this Action (including for the purpose of assessing motive);

- **Request No. 18:**  Plaintiffs' or Plaintiffs' counsel's retention of On Point in connection with this Action (including for the purpose of assessing whether the investigation was "independent" as Plaintiffs claim); and

- **Request No. 19:**  On Point's document retention policies or procedures (including for the purpose of assessing the comprehensiveness of On Point's productions).

And deposition testimony concerning, among other topics:[3]

- **Topic No. 4:**  On Point's participation in the investigation into the allegations in the SAC (including for the purpose of understanding the scope and results of the investigation);

- **Topic Nos. 7–8:**  Communications between On Point and (i) Plaintiffs or Plaintiffs' counsel and (ii) any current or former employee or director of Wells Fargo (including for the purpose of understanding the scope and results of On Point's investigation);

- **Topic No. 10:**  On Point's (i) standard investigative practices and procedures and (ii) the practices and procedures utilized in the investigation into any of the allegations in the SAC (including for the purpose of assessing reliability and bias);

- **Topic No. 11:**  The factual information discovered from the investigation into any of the allegations in the SAC (including for the purpose of understanding the scope of On Point's investigation and the underlying facts revealed);

- **Topic No. 12:**  Any report created by On Point in connection with the investigation into any of the allegations in the SAC (including for the purpose of understanding the scope of On Point's investigation and the underlying facts revealed);

---

[3]     The topics enumerated here are those specific topics to which On Point objects on the basis of the attorney work product doctrine.

- **Topic No. 13:** Any agreements concerning Plaintiffs or their counsel's retention of On Point (including for the purpose of assessing motive and bias); and

- **Topic No. 15:** The compensation that On Point received or expects to receive in connection with this Action (including for the purpose of assessing motive and bias).

On June 25, 2025, On Point agreed to produce documents with respect to only Request No. 8, which requested communications between Plaintiffs or their counsel and On Point concerning this Action. *See* McDonald Decl. Ex. K. Two days later, On Point produced 20 documents purportedly in response to Request No. 8. On Point's production, however, consisted entirely of publicly available documents such as court filings, news articles, and the biographies of On Point's employees, and **_no_** communications between On Point and Plaintiffs. The same day, On Point sent the Individual Defendants a letter stating that based on its prior letter setting forth On Point's objections to the Requests for Production, "the serving parties should now have a clear understanding of On Point's anticipated objections to the [17] topics noticed" for the 30(b)(6) deposition but did not provide any additional detail. *See* McDonald Decl. Ex. L.

On July 3, 2025, the parties met and conferred. During the meet and confer, On Point stated that it contested eight of the seventeen topics in the Notice of Deposition because they intrude into the protected work product of Plaintiffs' counsel. On Point further stated that it was unlikely to produce any additional documents in response to Request No. 8 or any of the other Requests, on the grounds that the remaining Requests intrude into protected work product, but that it might consider producing additional documents on a "non-waiver basis." The Individual Defendants explained that On Point cannot avoid discovery into this investigation by invoking the work product doctrine on behalf of Plaintiffs after Plaintiffs injected its investigation into the SAC. The Individual Defendants explained that this would be a classic instance of an

impermissible "sword and shield" approach.  The Individual Defendants stated that if the parties remained at an impasse, they planned to move before the Court to seek appropriate relief.

On July 7, 2025, the Individual Defendants sent a letter to On Point memorializing the positions it took during the meet and confer and requesting that On Point provide its final positions on each disputed matter.  The Individual Defendants further reiterated that if the parties remained at an impasse, they planned to move before the Court to seek appropriate relief.  *See* McDonald Decl. Ex. M.  On July 15, 2025, On Point sent a letter in response to the Individual Defendants providing its positions with respect to each topic noticed for deposition.  In the letter, On Point's counsel identified numerous topics for which he stated that he plans to instruct his witness not to answer questions on the basis of purported intrusions into attorney work product. On Point's counsel further confirmed that On Point will not produce additional documents in response to the Requests for Production and concluded, "[w]e will instruct our witness not to answer questions that seek the same protected work product materials that we have refused to produce in response to the document requests."  McDonald Decl. Ex. N.

The Individual Defendants and On Point have exchanged multiple letters and met and conferred in the hopes of resolving this dispute agreeably, but they remain at an impasse. Meanwhile, the deadline for fact discovery in this Action is quickly approaching on August 1, 2025, though the fact deposition deadline has been extended to September 30, 2025.  *See* McDonald Decl. Ex. B.  Since the law prohibits parties from wielding select portions of work product to their advantage while shielding opposing counsel from discovering the rest, the Individual Defendants respectfully request that the Court enter an order compelling On Point to comply with the Subpoenas by producing responsive documents within seven (7) days and

testifying at a 30(b)(6) deposition within fourteen (14) days.[4]

## ARGUMENT

The Court should compel On Point to comply with the Subpoenas served by the Individual Defendants. *First*, the requested discovery is relevant to the Action as Plaintiffs have used the results of its investigation to support their claims against the Individual Defendants. *Second*, On Point may not unilaterally assert the attorney work product doctrine on Plaintiffs' behalf where Plaintiffs and Plaintiffs' counsel have not indicated that they wish to seek such protection with respect to the Subpoenas. *Third*, even if On Point could properly assert the attorney work product protection, the doctrine does not shield documents regarding On Point's independent investigation from discovery. *Fourth*, even if On Point's investigation qualifies as protected attorney work product, On Point is still required to produce discovery relating to the underlying facts of and obtained through its investigation. *Finally*, On Point's remaining boilerplate objections are wholly meritless and should be overruled.

### I.    The Requested Discovery is Relevant.

"On a motion to compel, the party seeking information in discovery over an adversary's objection has the burden of showing its relevance." *Roy v. FedEx Ground Package Sys., Inc.*, 675 F. Supp. 3d 140, 144 (D. Mass. 2023) (cleaned up). The Individual Defendants' requests easily meet that standard. *See id.* ( "[I]nformation should be deemed 'discoverable if there is any possibility it might be relevant to the subject matter of the action'") (citation omitted).[5] As noted

---

[4]    Although On Point claims to have acted on Plaintiffs' behalf in pursuing its investigation, On Point refused to consent to having this motion to compel heard in the Northern District of California, where the underlying action is pending. Consequently, the Individual Defendants had no choice but to bring this motion in this District, the place of compliance of the Subpoena. *See* McDonald Decl. Ex. O.

[5]    It makes no difference to the discoverability of this information that On Point is a non-party. "The scope of discovery that may be sought from a non-party is the same as that which may be sought

above, Plaintiffs used On Point's investigation to bolster their claims against the Individual

Defendants and as purported evidence that "discrimination was systemic at Wells Fargo"—an

issue at the heart of this case.  *See* SAC ¶ 152.  Therefore, the discovery is relevant.

## II.     On Point May Not Unilaterally Assert the Attorney Work Product Doctrine on Plaintiffs' Behalf where Plaintiffs and Plaintiffs' Counsel Have Not Invoked Such Protection.

Although the attorney work product protection applies to work conducted by both

attorneys and their agents, the protection may only be *invoked* by attorneys and their clients, not

"independent" third parties.  *See Catino v. Travelers Ins. Co., Inc.*, 136 F.R.D. 534, 539 (D.

Mass. 1991) ("Unlike the attorney-client privilege, which belongs only to the client, the [work

product protections], may be claimed by either *the client or the attorney*." (emphasis added)); *see*

*also Steffenberg v. Gilman*, 2005 WL 8176505, at *3 n.5 (D. Mass. May 25, 2005) (similar).

Here, Plaintiffs have not asserted any work product protections over information in On

Point's possession that might be responsive to the Individual Defendants' Subpoenas.  In fact,

Plaintiffs' counsel *encouraged* the Individual Defendants to direct third-party discovery to On

Point for the purpose of discovering information relating to the investigation.  *See supra* p. 5.

Moreover, Plaintiffs were served with the Subpoenas at issue at the same time as On Point, and

throughout the meet and confer process and letter-writing that transpired between the Individual

Defendants and On Point, Plaintiffs at no point provided any indication that they wished to assert

work product protections.  Nor have Plaintiffs objected to deposition questioning about

communications with On Point.  During the depositions of two FEs, Plaintiffs lodged zero

objections to the many questions asked about the FEs' conversations with On Point.

---

from a party under [Rule] 34."  *MAO-MSP Recovery II LLC v. Mercury Gen. Corp.*, 2020 WL 5732332, at *2 (D. Mass. Sept. 24, 2020).

Importantly, deposition testimony of the FEs cannot substitute the information that Individual Defendants seek regarding On Point's investigation. Individual Defendants seek to explore the full scope of the investigation, including On Point's methodologies, the individuals that On Point contacted and interviewed (including any Plaintiffs chose not to quote in the SAC), and the information that On Point considered—not merely the cherry-picked quotations that Plaintiffs chose to include in their pleading.

Given that neither Plaintiffs nor their counsel are invoking work product protections over the discovery requested from On Point, On Point may not attempt to invoke the attorney work product protection on their behalf to avoid compliance—particularly where it appears that Plaintiffs agree that On Point's investigation is an appropriate matter for discovery.[6]

### III.     Even if On Point Could Properly Invoke the Attorney Work Product Protection, the Doctrine Does Not Shield Documents Regarding On Point's Investigation from Discovery in the Circumstances of this Case.

The work product doctrine protects work prepared by attorneys and their agents, including investigators, so long as that work was completed in anticipation of litigation. *See United States v. Nobles*, 422 U.S. 225, 237–38 (1975); *see also* Fed. R. Civ. P. 26. Importantly, the purpose of the work product doctrine is "to protect the integrity of the adversarial process." *In re: New England Compounding Pharmacy, Inc.*, 2016 WL 6883215, at *4 (D. Mass. July 28, 2016) (citations omitted). Consequently, work product protections are waived "when documents are used in a manner contrary to the doctrine's purpose" of maintaining the adversarial process, such as by "disclosing material in a way inconsistent with keeping it from an adversary." *Id.*

---

[6]     Critically, On Point also refuses to produce discovery that would confirm that Plaintiffs retained it to investigate the allegations in the SAC on their behalf in the first place, a threshold requirement for the invocation of attorney work product protections. *See Stamps v. Town of Farmingham*, 38 F. Supp. 3d 134, 143 (D. Mass. 2014) ("The document must also be 'prepared by or for a party, or by a party's representative'" for the work product protection to apply);*see also* McDonald Decl. Ex. N (letter from On Point's counsel contesting discovery requests relating to Plaintiffs' engagement of On Point).

(citations omitted); *see also Fine v. Sovereign Bank*, 2008 WL 11388663, at *4 (D. Mass. Mar. 7, 2008) ("[T]he prevailing rule in this circuit is that disclosure to an adversary, real or potential, forfeits work product protection." (citations omitted)).

A critical piece of preserving the integrity of the adversarial process is ensuring fairness. Thus, the Supreme Court has repeatedly instructed that work product privileges "cannot at once be used as a shield and sword" and such privileges "may implicitly be waived when [a party] asserts a claim that in fairness requires examination of protected communications." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991); *see also Nobles*, 422 U.S. at 239–40 ("Respondent, by electing to present the investigator as a witness, waived the privilege with respect to matters covered in his testimony. Respondent can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination.").

The First Circuit has consistently upheld this standard, requiring parties to disclose related information when they use otherwise-protected work product to their unilateral advantage. In *Columbia Data Prods., Inc. v. Autonomy Corp. Ltd*., the Court explained that "a subject matter waiver of work product material is appropriate where a party is attempting to use otherwise protected information as 'both a sword and a shield' to gain an unfair tactical advantage." 2012 WL 6212898, at *17 (D. Mass. Dec. 12, 2012). Noting that "[t]he same concerns for fairness that underlie the waiver of attorney-client privileged communications are equally applicable to waiver of work product information," the Court reasoned that such waivers "ensure[] fairness because [they] disable[] litigants from using [these protections] as both a sword and a shield. Were the law otherwise, the client could selectively disclose fragments

helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the truth-seeking process." *Id.* (citation omitted). The Court thus concluded that "[i]n fairness, [plaintiff] cannot use [its agent's] status and work . . . as a 'sword' against the defendants, while relying on [] the work product doctrine as a 'shield' to prevent disclosure of related materials." *Id*. at *18; *see also Barrett v. Badger Ladder, LLC*, 2017 WL 462511, at *9 (D.N.H. Feb. 3, 2017) ("The defendant concedes that some subset of the photographs taken by [an investigator] were relied on by the defendant's expert, attached to his expert report, and thus disclosed to the plaintiff and his counsel. The defendant thus waived the protection over [the] photographs.").

This Court has further explained that "[a]n implied waiver occurs when the party asserting the privilege places protected information at issue for personal benefit through some affirmative act, and to protect against disclosure of that information would be unfair," noting that waivers should be applied based on "(1) whether the proponent of the privilege took some affirmative step such as filing a pleading; (2) whether the affirmative act put the privileged information at issue by making it relevant to the case; and (3) whether upholding the privilege would deny the opposing party access to information vital to its case." *Metro. Prop. and Cas. Ins. Co. v. Savi Hill Fam. Chiropractic, Inc.*, 2019 WL 13180456, at *2 (D. Mass. Mar. 15, 2019) (citation omitted); *see also Bacchi v. Mass. Mut. Life Ins. Co.*, 110 F. Supp. 3d 270, 276 (D. Mass. 2015). In *Metro. Prop.*, the Court found that the plaintiff "used affirmatively its pre-suit investigation activities in support of its claims in this case" by "strategically elect[ing] to share such details about its investigation" in the complaint. 2019 WL 13180456, at *3. By referencing the investigation to "bolster[] [its] arguments regarding its likelihood of success on the merits," the plaintiffs waived work product protections because "[u]nder such circumstances, full disclosure of [the relevant] reports and memoranda is only fair." *Id.*

These cases are directly on point here, and the result should be the same. Plaintiffs inserted fourteen paragraphs into their SAC describing On Point's "independent investigation" that purportedly revealed evidence of widespread discrimination at Wells Fargo, replete with detailed descriptions of On Point's interviews with the FEs. *See* SAC ¶¶ 152–166. Throughout these paragraphs, Plaintiffs alleged that the FEs believed discrimination was widespread throughout Wells Fargo, witnessed sham interviews, received customer complaints alleging lending discrimination, were instructed to keep such complaints deescalated, and observed an increase in mortgage overlays year after year (which allegedly heightened the eligibility requirements for loan approval and disproportionately impacted minority borrowers). *Id.*

These fourteen paragraphs "put the privileged information at issue," *Metro. Prop.*, 2019 WL 13180456, at *2, particularly given that the Individual Defendants' oversight and knowledge of alleged discrimination at Wells Fargo is the basis of Plaintiffs' claims. The law plainly prohibits Plaintiffs from using select portions of the investigation's findings as a "sword," while shielding the Individual Defendants from the remainder of the findings. To allow otherwise constitutes an impermissible "unilateral testimonial use of work-product materials," *Nobles*, 422 U.S. at 239–40, like the defendant in *Barrett* who used a subset of photos in its expert report, or the defendant in *Columbia Data* who wielded the work of its auditor in its complaint. *Columbia Data*, 2012 WL 6212898, at *18; *Barrett*, 2017 WL 462511, at *9. Indeed, "courts have generally found a waiver of privilege when the claims and defenses are so 'enmeshed' in the pre-suit investigation materials that it would be unfair to withhold the material from the defending party." *Metro. Prop.*, 2019 WL 13180456, at *3.[7]

---

[7]    Moreover, summarizing witness interviews rises to the level of putting facts "at issue" in a complaint. *See, e.g.*, *In re Banc of Cal. Sec. Litig.*, 2018 WL 2373860, at *1 (C.D. Cal. May 23, 2018) ("[The investigator's] disclosure of summaries of the [15] witness interviews acted to waive any work product or attorney-client privilege over any notes or memoranda memorializing those interviews.").

In its letter to the Individual Defendants dated July 15, 2025, On Point principally relies on the inapposite case *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 2606830 (N.D. Cal. May 6, 2016) ("*AMD*") in support of its argument that Plaintiffs have not waived work product protection. *See* McDonald Decl. Ex. N. *AMD* was a securities fraud class action case, where, "[a]s is the practice in such actions in which the plaintiffs must satisfy the heightened pleading standard of the PSLRA, the operative complaint relie[d] upon statements from 'confidential witnesses.'" *AMD*, 2016 WL 2606830 at *1. The defendants alleged that the plaintiffs' confidential witnesses issued sham statements and, in moving to strike the associated allegations, sought to discover attorney work product relating to the investigation, including the plaintiffs' communications with the confidential witnesses and interview notes. *Id.* The court declined to compel production because it held depositions were the proper mechanism for uncovering the veracity of a witness's testimony, particularly because in disputes over facts, "what matters is not what the witnesses told Plaintiffs' investigator, but what they said under oath when deposed."[8] *Id.* at *4. The court concluded, "the work product privilege would be meaningless if every time a witness testifies differently from what was alleged in a complaint . . . the party for whom the witness testifies is deemed to have waived the protection by responding that the party had a good faith basis for making the allegations in the first instance." *Id.* at *5.

The factual situation in *AMD* is entirely unrelated to the factual situation here. In that case, the plaintiffs did not tout the "independent investigation" or claim that its results supported

---

[8]     Notably, in *AMD*, the investigator submitted a declaration in which she described the "policies and procedures concerning confidential witness investigations as well as the steps she took in her investigation of this case," as well as "her non-work product communications with the witnesses." *Id.* at *4. Here, On Point has refused to provide documents or testimony regarding (1) its investigation policies and procedures and (2) its communications with witnesses. *See* McDonald Decl. Ex. N at 10; 20-21.

their claims, as Plaintiffs did here.  Thus, unlike in *AMD*, Individual Defendants do not seek

discovery from On Point for the purpose of determining whether the allegations that Plaintiffs

attributed to the FEs were deceptive.  The Individual Defendants have investigated that issue

separately by serving non-party subpoenas to the FEs, and the depositions of those FEs are

underway, precisely in line with *AMD's* formulation.  Rather, the purpose of the Subpoenas is to

discover the full set of facts underlying Plaintiffs' claim that their "independent investigation"

and "conversations with former employees"—possibly many more conversations than the four

cited in the SAC—"support the claim that discrimination was systematic at Wells Fargo."[9]  SAC

¶ 153.  Given that Plaintiffs' claims hinge on whether the Individual Defendants knew or should

have known about the alleged discrimination at Wells Fargo —*i.e.*, whether they exercised

adequate oversight over lending pursuant to Plaintiffs' *Caremark* claims, or whether they issued

truthful statements regarding hiring pursuant to Plaintiffs' securities law claims—the Individual

Defendants have a substantial need for this discovery.[10]

Moreover, contrary to On Point's objections, the Individual Defendants' Subpoenas are

narrowly tailored to uncovering the details relating to the investigation that was touted in the

---

[9]     On Point's citation to *Schoenmann v. Fed. Deposit Ins. Corp.*, 7 F. Supp. 3d 1009 (N.D. Cal. 2014) is no more illuminating.  *Schoenmann* involved a dispute over the credibility of a witness's declaration, where the defendant sought to compel the production of drafts of the declaration and communications between the plaintiff's witness and the plaintiff's attorney.  *Id.* at 1013.  The court held that materials relating to the evolution of an affidavit, including drafts and related communications, are protected by the work product rule.  *Id.* at 1013–14.  The court further noted, like in *AMD*, that the defendant lacked any need to discover work product where it had an opportunity to depose the witness to investigate any relevant information she may possess.  *Id.* at 1014.  For the reasons previously stated, this ruling has no bearing on the instant matter, where Plaintiffs affirmatively injected its "independent investigation" into the SAC to bolster its claims of systemic discrimination at Wells Fargo.

[10]    The Individual Defendants' need for this discovery is especially acute because the information requested, such as the names of all those On Point interviewed and the facts underlying the results of the investigation, cannot not be revealed by deposing the Former Employees.  *See AMD*, 2016 WL 2606830 at *6 ("Courts often find no substantial need for otherwise protected materials where the requesting party has the opportunity to depose the witness.").

SAC.  For example, Topic No. 4 addresses On Point's participation in the investigation of Plaintiffs into the allegations in the SAC; Topic No. 7 addresses On Point's communications with Plaintiffs or Plaintiffs' Counsel concerning the Action; Topic No. 8 addresses On Point's communications with Wells Fargo's current or former directors or employees; Topic No. 10 addresses On Point's investigative procedures generally and as utilized in the specific investigation into the allegations in the SAC; Topic No. 11 address the factual information discovered in the investigation into the allegations in the SAC; and Topic No. 12 addresses reports created by On Point in connection with the investigation into the allegations in the SAC. The Requests for Production ask for substantially similar information.  *See supra* pp. 6–8.

On Point has objected to each of the aforementioned topics on work product protection grounds.  *See* McDonald Decl. Ex. N.  Yet as explained above, Plaintiffs waived such protections by injecting the investigation into the SAC to bolster their allegations of discrimination at Wells Fargo, which is a central issue in the Action.  For these reasons, On Point should be compelled to produce documents and testimony in response to the Subpoenas.

### IV.    Even if On Point's Investigation Qualifies as Protected Attorney Work Product, On Point is Still Required to Produce Discovery Relating to the Underlying Facts of and Obtained Through its Investigation.

As noted, the attorney work product doctrine "protect[s] against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B).  However, the doctrine only protects work product, not the underlying facts: "Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts

concerning the creation of work product or facts contained within work product." *Jones v. Secord*, 2011 WL 2456097, at *2 (D. Mass. June 15, 2011) (citation omitted).[11]

Therefore, even if On Point's investigation qualifies as protected work product, On Point cannot avoid discovery relating to the methods underlying its investigation ("the creation of work product") or the findings in its reports ("facts contained within work product."). *Jones*, 2011 WL 2456097, at *2. Indeed, all of the Requests for Production and the topics noticed for deposition seek information, in most part, relating to the facts underlying On Point's investigation. *See, e.g.*, Request Nos. 5–6 and Topic Nos. 7–9 (communications between On Point and Wells Fargo employees); Request Nos. 1, 17 and Topic No. 10 (On Point's investigative practices and methodologies); Request Nos. 7, 11 and Topic Nos. 11–12 (the factual information relating to the investigation into the allegations in the SAC); Request Nos. 2-3, 13–15 and Topic Nos. 13, 15 (On Point's potential motives). Moreover, as stated, during the depositions of the two FEs that have taken place, Plaintiffs lodged zero objections to the many questions asked about the FEs' conversations with On Point. Importantly, the deposition testimony of the FEs cannot substitute for the information that Individual Defendants seek regarding On Point's investigation, such as the individuals that On Point contacted and interviewed beyond those quoted in the SAC. *See supra* p. 12.

For these reasons, even if On Point is not required to produce work product reflecting the mental impressions of Plaintiffs' counsel, On Point should be compelled to produce all other responsive documents that consist of the facts underlying the creation of the investigation and the

---

[11]    *See also In re: New England Compounding Pharmacy*, 2016 WL 6883215, at *4 ("The work product doctrine does not protect the underlying facts contained in the documents."); *In re Grand Jury Subpoena*, 220 F.R.D. 130, 141 (D. Mass. 2004) ("The work product doctrine protects against disclosure of materials that a party, her attorney, or her representative prepares in anticipation of litigation, although it does not typically extend to the underlying facts contained within those materials.") (citation omitted).

information uncovered.  On Point should be required to testify in response to each Topic noticed for 30(b)(6) deposition regarding the same.

V.    **On Point's Remaining Objections Are Make-Weight And Should Be Overruled.**

On Point also objected to the Subpoenas on the bases of relevance and proportionality, overbroad time period, undue burden on a non-party, and confidential commercial information. These objections are unfounded, including for the reasons described *supra* pp. 6–8.  The Subpoenas exclusively request communications and materials that On Point issued throughout the course of and for the purpose of conducting its investigation into the allegations in the SAC. These documents are thus plainly relevant, proportional, and constitute the types of information that would reasonably be kept in the ordinary course of business.  Further, as discussed during the July 2 meet and confer between the parties, any documents produced would be subject to the protective order entered in this case.  *See* McDonald Decl. Ex. M.  On Point's remaining objections are entirely boilerplate and generic, and "[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all."  *Cook v. Lynn and William, Inc.*, 344 F.R.D 149, 155 (D. Mass. 2023) (declining to consider a party's "unsubstantiated" objections to the topics listed on a Rule 30(b)(6) deposition notice).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Individual Defendants' motion to compel and order On Point to comply with the Subpoenas by producing responsive documents within seven (7) days, and a witness to testify at a 30(b)(6) deposition within fourteen (14) days.

Dated: July 24, 2025
New York, New York

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: */s/ Abena Mainoo*

Abena Mainoo (BBO# 677622)
Victor L. Hou (*pro hac vice forthcoming*)
Mark E. McDonald (*pro hac vice forthcoming*)
One Liberty Plaza
New York, NY 10006
Telephone:  (212) 225-2000
Email:       amainoo@cgsh.com
                vhou@cgsh.com
                memcdonald@cgsh.com

Jennifer Kennedy Park (*pro hac vice forthcoming*)
1841 Page Mill Rd.  Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4130
Email:       jkpark@cgsh.com
*Attorneys for Movant*
*Charles W.  Scharf*

WILLKIE FARR & GALLAGHER LLP

By: */s/ John D. Mitchell*

John D. Mitchell (BBO# 662806)
300 North LaSalle Dr.
Chicago, IL 60654-3406
Telephone:      (312) 728-9000
E-mail:          jmitchell2@willkie.com

Todd G. Cosenza (*pro hac vice forthcoming*)
Charles Cording *(pro hac vice forthcoming)*
Zeh S. Ekono (*pro hac vice forthcoming*)
Patricia O. Haynes *(pro hac vice forthcoming)*
Amanda M. Payne *(pro hac vice forthcoming)*
787 Seventh Avenue
New York, NY  10019-6099
Telephone:      (212) 728-8000
E-mail:          tcosenza@willkie.com
                ccording@willkie.com

zekono@willkie.com
phaynes@willkie.com
apayne@willkie.com


Alexander L. Cheney *(pro hac vice forthcoming)*
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone:      (415) 858-7400
Facsimile:      (415) 858-7599
E-mail:          acheney@willkie.com

*Attorneys for Movants Steven D. Black, Mark A. Chancy, Celeste A. Clark, Theodore F. Craver, Jr., Richard K. Davis, Wayne M. Hewett, Donald M. James, Cecelia G. Morken, Maria R. Morris, Felicia F. Norwood, Charles H. Noski, Richard B. Payne, Jr., Juan A. Pujadas, Ronald L. Sargent, and Suzanne M. Vautrinot*